WARDER, BUSHNELL & GLESSNER CO. p. b. a. *vs.* WILLIAM S. STEWART & JANEY STEWART d. b. r.

Sussex County, April Term, 1896,

**Married Women. Bond.**—Under section 9, of the married women's act of April 9, 1873, as amended by act of February 27, 1879, a married woman may execute a bond with or without warrant of attorney, to secure a debt not her own.

**Same. Seal.**—Where a bond was executed by the husband and wife and there was a seal opposite the name of the husband and none opposite that of his wife, in the absence of proof to the contrary, the presumption is, that the wife adopted the seal opposite the name of her husband.

**Negotiable Paper. Alteration.**—If after a note has been endorsed and delivered, any material alterations are made without the consent of the maker, no action can be maintained on the note. Such alterations, however, must be such as to materially change the character of the instrument or the relation of the parties thereto.

**Same.**—Mere change in the color of the ink, the addition of a number by the plaintiff, for convenience, or other immaterial alterations will not vitiate the note if it remain subsequently the same.

**Same.**—Even material changes in a negotiable instrument made before execution and delivery in the presence of the defendant will not affect the right of action.

This was an appeal in an action of debt in a lost note under seal. Pleas, *non est fectum*, payment, set off, statute of limitations, release, and accord and satisfaction.

At the trial the plaintiff below appellant, produced evidence to show that the note was under seal, given September 1, 1892, for $93.28, without interest, payable September 1, 1893, with a warrant of attorney. It was signed by William T. Stewart and Janey Stewart, and was given for goods sold to the husband and the wife was taken as security.

George M. Fleetwood, one of the witnesses and a witness to the note, testified he did not think there was any seal affixed to Stewart's name.

The defendant introduced evidence showing that the note had been altered by changing the date of payment September 1, 1894 to September 1, 1893, and the four¸had been scratched out and three written in its place.

*Boyce,* for the plaintiff, submitted the following prayers for instructions :

That a bond is an instrument under seal whereby one person becomes bound to another for the payment of a sum of money, or for the performance of any other act or thing ; and that no particular form of words is necessary to create a bond ; that any mode of expression by which the intention of the parties clearly appears will be sufficient.

That if the jury believe that any erasures, alterations or changes were made in the lost note sued upon in this case with the knowledge and consent of the defendants, or either of them at or before the execution and delivery thereof, then such alteration could not and should not have any effect under such circumstances to invalidate the note or defeat the right of the plaintiff to recover upon the same.

That nothing appearing to the contrary, an alteration in an instrument or paper writing, will be presumed to be contemporaneous with the execution thereof.

That however the note sued upon in this case may have appeared to the witnesses who have testified in this case who saw the note a year or more after it had passed from the defendants to the plaintiff, and after it was lost, if the jury believe that no material alterations, such as changing the amount of the debt originally written in the note, a change of the parties to the note, or change of any of the dates or time when the note was made or would become payable, but in all the material parts is the same note that the defendants executed and delivered to the plaintiff or their agent,

then the appearance of different colors of ink afterwards seen upon the note will not invalidate it.

That when a seal affixed to one or more of the names of the obligors in a bond, but not to all of them, the law presumes that those obligors against whose names no seals appear, adopted the seals affixed by the others—that this presumption may be rebutted by proof, but the defendants had offered no proof in this case denying that the note sued upon was not sealed by both of the obligors.

That Section 9 of the statute in relation to married women, as amended, Rev. Code (1893) 601, enables a married woman over twenty-one years of age to give a bond with or without warrant of attorney, as if she were a *feme sole*, and that within the terms of this provision of the statute, she may contract in respect to matters other than her own property.

*Richards*, for the defendant, submitted the following prayers:

*First.* That if they are satisfied from the evidence that a material alteration was made in the note given to the Warder, Bushnell & Glessner Company, by the said William T. Stewart and Janey Stewart, after the same had been signed by them, it vitiates the note and renders it null and void.

*Second.* That the debt which the note was given to secure, being due from William T. Stewart alone, the husband of Janey Stewart the note was not binding upon her, as it was not such a bond within the meaning of the Act of Assembly, which she as a married woman, had the right to give. The contract, therefore, not being a joint one, no judgment can be rendered for the plaintiff in this case.

*Third.* The note being declared on as the writing obligatory of the defendants, the jury must be satisfied from the evidence, that there was a seal affixed to the name of Janey Stewart, or that she adopted the seal of William T. Stewart as her seal, or they can not render judgment for the plaintiffs.

*Fourth.* That the note proven in the case is not such a bond as a married woman had the right to give within the meaning of

the Act of Assembly, and is not a bond in the ordinary and common acceptation of that word as contemplated in the Act of Assembly.

LORE, C. J., (charging the jury.)

This is an action brought by the Warder, Bushnell & Glessner Company, plaintiffs, against William T. Stewart and Janey Stewart his wife, the defendants to recover the amount of a lost note or obligation under seal, with a warrant of attorney thereto, claimed by the plaintiff, to have been made, executed and delivered by the defendants to the plaintiff, dated September 1, 1892, for the sum of $93.28, payable September 1, 1893. The plaintiff also claims interest from September 1, 1893, making the aggregate claim at this date, $116.33.

The note itself has been mislaid or lost, and has been proved by secondary evidence, that is, from the recollection of the attesting witness and others as to the tenor thereof.

The obligation is proved to have been given by a husband and wife, for the debt of the husband, and its collection is resisted by the defendants on several grounds.

It is objected, that as the obligation was not given for the benefit of the wife, or the protection of her estate, but for the debt of the husband, that the obligation is void as to her; that as the defendants are sued jointly, no recovery can be had against either.

This involves the construction of Section 9 of the married woman's act of April 9, 1873, as amended. In *Kohn vs. Collison*, decided in Kent County, April Term, 1893; this Court ruled, that a married woman could not become an accommodation endorser on her husband's negotiable paper, to secure his antecedent debts. The Court then said, " In no case has the wife been permitted to contract generally in relation to matters other than her own property, unless expressly authorized so to act as a *feme sole.*" We now adhere to and emphasize that ruling, which has since been approved in *Wright vs. Parvis and Williams Company*, decided in New Castle County, November Term, 1894.

Section 9 of the act of 1873, as amended, by act of February 27th, 1879, reads as follows:

"And in any case a married woman above the age of 21 years, may give bond with or without warrant of attorney, just as if she were a *feme sole*." What might have been the construction of the language of the act of March 17, 1875, does not now concern us. The amendment of February 27, 1879, above quoted, uses technical language of such scope and precision, that after the most careful consideration, we all agree that under its terms a married woman may execute a bond with or without warrant of attorney, to secure a debt not her own. The language of the section being expressly that she may execute such bond, "just as if she were a *feme sole*." As to this particular species of obligation, the Legislature seems to have removed expressly all disability. The case therefore comes within the rule in *Kohn vs. Collison.*

The words "as if *feme sole*," when unrestricted by the context, have been quite uniformly considered by the Courts in construing statutes relating to married women, as giving the largest possible power, and practically emancipating the wife from contractual limitations, imposed upon her as a married woman, with respect to the subject matters of the act.

In Roop, *et ux* Appeal, 132 Pa. 496 (19 Atl. Rep. 278), cited by the the counsel for the defendants, Chief Justice Paxson of the Supreme Court of the State of Pennsylvania, specifically names these words as the proper ones for the Legislature to use if unlimited power were intended to be given. He there says, " If however it was intended to confer this broad power, and place a married woman on the same plane as a *feme sole*, it could have been done in a few lines, declaring that hereafter a *feme covert*, should have the same power to contract debts as a *feme sole*." The same doctrine is sustained in *Andrews vs. Matthews*, 124 Mass. 108 ; and also 2 Bishop on Married Women, § 233.

The defendants further object, that even if a married woman has authority to execute a bond for purposes such as this case dis-

closes, that the obligation proved in this case is not such a bond as comes within the terms of the statute.

Hurlstone in his work on bonds uses this language: "A bond is an instrument under seal, whereby one becomes bound unto another, for the payment of a sum of money, or for the performance of any other act or thing." No certain form is necessary. Any form of words in writing, under seal acknowledging a debt, and naming an obligee is as obligatory as the most formal act. 2 Am. and English Ency. Law 448. If therefore you believe the lost paper was in writing, signed by the defendants and under seal obliging the defendants to pay to the plaintiff the sum of money named, it was a bond within the meaning of the statute.

It is further objected that there was no seal opposite the signature of the wife, but only opposite the signature of the husband. On this point, in *Davis vs. Burton*, 9 Scanmon 41, the Supreme Court of Illinois used this language: "We feel warranted by common sense, by justice and sound reason, as well as by the principles of law, to *presume* that all the signers of an instrument indicating upon its face an intention to sign it, adopted any seal or scroll that may be annexed to the name of one." The Supreme Court of New Hampshire in *Pequawkett Bridge vs. Matthes*, 7 N. H. 230, say: "The authorities are conclusive, that there may be a less number of seals than of signers to an instrument. It is said that it is not necessary to have on a deed as many pieces of wax or wafers as there are obligors, and that one wafer may serve for all." This is old law and is found in Sheppard's Touchtone, p. 51, and also in Comyn's Digest and other works of like character. Therefore the presumption is, that the wife adopted the seal opposite the name of her husband, and you are warranted in so finding, unless there is some proof to the contrary.

It is also claimed that there should be no recovery, because it is alleged the note has been altered. If from the evidence you are satisfied, that there have been any material alterations made after the note was endorsed and delivered by the defendants without their consent, this action cannot be sustained. Such alterations, however,

must be material, changing the character of the instrument or the relation of the parties thereto. Mere change in the color of the ink; the addition of a number by the plaintiff for convenience, or other immaterial alterations would not vititate the note if it remained substantially the same. Even if the changes were material, yet if they were made before execution and delivery, in the presence of and with the consent of the defendants, the note is valid.

Therefore, if you believe from the evidence. that the lost note was in writing, under seal, signed by the defendants, executed and delivered to the plaintiff for the payment of $93.28, dated and maturing as alleged, and not materially altered without the consent of the defendants, your verdict should be for plaintiff. Otherwise, for the defendants.

*Verdict for the plaintiff for $110.72.*